IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| CONNIE DENCE, as personal representative for the Estate of Janelle Marie Butterfield, | Case No. 1:20-cv-00671-CL |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| WELLPATH, LLC; CORRECT CARE SOLUTIONS, LLC; CARLY HINKLE; DAWN CASE; OPTIONS FOR SOUTHERN OREGON, INC.; MERRICK KELLY-ROBINSON; JOSEPHINE COUNTY; DAVE DANIEL; AMANDA WASS; CRYSTAL HULSEY; VIVEK SHAH; PATRICIA SHEVOKIS; ED VINCENT; and CLINT MOONEY, | |
| Defendants. | |

**CLARKE,** United States Magistrate Judge:

This case comes before the Court on Plaintiffs' Motion to Compel (ECF No. 83). Plaintiff Connie Dence ("Plaintiff"), as personal representative of the Estate of Janelle Marie Butterfield

1 – Opinion and Order

("Butterfield"), filed this action against Defendants in April 2020. Plaintiff asserts deliberate indifference claims under 42 U.S.C. § 1983, as well as a negligence claim and a gross negligence/reckless misconduct claim under Oregon state law. First Am. Compl. ¶¶ 121–140, ECF No. 36 ("FAC"). For the reasons below, Plaintiffs' motion is GRANTED in part and DENIED in part.

## BACKGROUND

On July 27, 2018, Butterfield was arrested and taken to the Josephine County Jail. *Id.* ¶ 69. Plaintiff alleges Defendants knew Butterfield had a history of mental illness, substance abuse, and suicidality because of her prior stays at the Josephine County Jail. *Id.* ¶¶ 41–68. When Butterfield was booked into the jail, she was tased and placed in a restraint chair because of her behavior. *Id.* ¶¶ 71–83. Jail staff noted Butterfield had mental health concerns, and Defendant Wellpath's employee prescribed an antipsychotic medication for Butterfield without first seeing her in person. *Id.* Jail staff placed Butterfield in segregated housing, thereby restricting her out-of-cell time and her contact with other people. *Id.* ¶¶ 84–85. Butterfield's antipsychotic medication was discontinued after two weeks. *Id.* ¶¶ 78–94.

Butterfield was held at the Josephine County Jail until she died by suicide on September 5, 2018. *Id.* ¶ 102. During that time, Plaintiff alleges no doctor, nurse practitioner, or nurse saw Butterfield. Pl.'s Mot. Compel 6, ECF No. 83 ("Pl.'s Mot."). Plaintiff also alleges that Butterfield did not receive any mental health care during her time at the Josephine County Jail. *Id.* at 7.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 26(b) describes the scope of discovery, in relevant part, as follows:

2 – Opinion and Order

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Federal Rule of Civil Procedure 37 allows a party seeking discovery to bring a motion to compel responses to discovery. The resisting party carries the heavy burden of showing why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The resisting party must show the discovery request is overly broad, unduly burdensome, irrelevant, or disproportional in light of "the issues at stake." Fed. R. Civ. P. 26(b)(2)(C). In order to meet this heavy burden, the resisting party must detail, with specificity, the reasons why each request is improper; "[b]oilerplate, generalized objections are inadequate and tantamount to making no objection at all." *S.E.C. v. Banc de Binary*, 2014 WL 5506780, at *3 (D. Nev. Oct. 30, 2014). "Under Rule 34, a party is not required to prepare new documents; the Rule only requires a party to produce documents that already exist." *Perales v. Thomas*, No. 10-cv-01314-BR, 2012 WL 4760872, at *1 (D. Or. Oct. 4, 2012) (citing *Alexander v. FBI*, 194 F.R.D. 305, 310 (D.C. Cir. 2000)).

## DISCUSSION

Plaintiff filed a 65-page motion to compel that addresses: (1) Plaintiff's initial and supplemental requests for production, (2) Plaintiff's requests for admission, and (3) depositions. *See* Pl.'s Mot. 5, ECF No. 83. For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

I.  **Requests for Production**

**RFP No. 2**: "Plaintiff requested 'all contracts and agreements in effect between any defendants in November 2016.'" Pl.'s Mot. 11. While Plaintiff received relevant documents from Defendant Josephine County, certain payment amounts were redacted per Wellpath Defendants' request. *Id.* Plaintiff argues Wellpath Defendants' financial motives are relevant to the issues in this case. *Id.* Wellpath Defendants represent that they produced unredacted contracts covering the period Butterfield spent in the Josephine County Jail, but argue that the costs of the medical contract from 2019 through 2020 are not relevant to Butterfield's care in 2018. Defs.' Resp. 8, ECF No. 93. The Court concludes these costs are relevant and orders Wellpath Defendants to produce unredacted copies of the medical contracts.

**RFP No. 3**: "Plaintiff requested the 'personnel files, including performance evaluations and disciplinary records,' for each of the named Wellpath defendants (Carly Hinkle, Dawn Case, Amada Wass, Krystal Hulsey, Dr. Vivek Shah, and Patricia Shevokis)." Pl.'s Mot. 12–13. Specifically, Plaintiff argues Wellpath Defendants have failed to produce: (1) any personnel file for Krystal Hulsey; and (2) personnel files for the other individual Wellpath Defendants after the date of Butterfield's death. *Id.* The Court finds that the requested documents are relevant and orders Wellpath Defendants to produce the personnel file for Krystal Hulsey and complete personnel files for the other individual Wellpath Defendants past the date of Butterfield's death.

**RFP No. 4**: "Plaintiff requested 'all documents and materials reflecting any policies, procedures, customs, practices, training or guidance applicable to the Josephine County Jail, and to personnel working in the Josephine County Jail' during the time period that Ms. Butterfield was held in the jail." *Id.* at 13. Plaintiff argues that producing complete versions of all policies and procedures is not unduly burdensome because this case involves numerous issues with the

medical program at the Josephine County Jail. *Id.* at 14. This Court finds that production will not be overly burdensome and that the requested documents are relevant to the issues in this case. As such, this Court orders Wellpath Defendants to produce all documents responsive to Plaintiff's request for production.

**RFP No. 11**: "Plaintiff requested 'a corporate organizational chart for Wellpath, LLC from the July-October 2018 time frame, including the corporate organization in Oregon.'" *Id.* at 15. Plaintiff later agreed to narrow the request to "any organizational charts that reference Wellpath/CCS staff at the Josephine County Jail[.]" *Id.* Wellpath Defendants respond that they have searched for an organizational chart and do not have such a document for Josephine County. Wellpath Defs.' Resp. 11. Plaintiff's motion is denied because Wellpath Defendants cannot produce a document that does not exist. *See Perales*, 2012 WL 4760872, at *1.

**RFP No. 13**: "Plaintiff requested 'the monthly billing sent by Wellpath, LLC to Josephine County for medical and mental health services in the Josephine County Jail for all of 2018.'" Pl.'s Mot. 15. Plaintiff argues Wellpath Defendants' financial motives are central to the issues in this case because the Josephine County Jail's medical and mental health programs were deliberately understaffed to cut costs. *Id.* at 16. The Court finds that these documents are relevant and orders Wellpath Defendants to produce all documents responsive to Plaintiff's request for production.

**RFP No. 15**: "Plaintiff requested 'copies of any lawsuits filed against Wellpath, LLC, or its predecessors, in the last ten years in which the plaintiff claimed inadequate or inappropriate medical care was provided in a jail or prison facility in which Wellpath LLC, or its predecessors, were providing medical care.'" *Id.* Plaintiff later limited the request to "'all lawsuits related to mental health, mental illness, or lack of medication.'" *Id.* Wellpath Defendants objected on the

5 – Opinion and Order

grounds of overbreadth, undue burden, and relevance. Defs.' Resp. 11. Specifically, Wellpath Defendants argue that "a complaint is not evidence, much less proof that the allegations were true or were found to be false." *Id.* Wellpath Defendants also argue HIPAA applies to these previous lawsuits because all plaintiffs were previously "patients" and therefore their lawsuits contain "identifiable health information." *Id.* at 12.

The Court finds that Plaintiff's revised request is not overbroad, unduly burdensome, or irrelevant to the extent Plaintiff seeks information about lawsuits filed within the last five years. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Additionally, the Court is not persuaded by Wellpath Defendants' assertion that publicly available information is "identifiable health information" within the meaning of HIPAA. As such, the Court orders Wellpath Defendants to produce copies of lawsuits related to mental health, mental illness, or lack of medication filed against Wellpath, LLC, or its predecessors, in the last five years in which a plaintiff claimed inadequate or inappropriate medical care was provided in a jail or prison facility where Wellpath, LLC, or its predecessors provided medical care.

**RFP No. 19**: "Plaintiff requested 'a current balance sheet or other reliable document showing the net worth of Wellpath, LLC.'" Pl.'s Mot. 17. Wellpath Defendants "request[ ] that production of this information be delayed until after plaintiff has made a sufficient showing that punitive damages will be awarded." Defs.' Resp. 12. The Court does not find production appropriate at this time. As such, Plaintiff's motion is denied without prejudice.

**RFP No. 20**: "Plaintiff requested 'all documents and materials relating to any mortality review, morbidity report, root cause analysis, sentinel event or any similar type of internal audit or review of the death of Janelle Butterfield.'" Pl.'s Mot. 18. Wellpath Defendants argue the

attorney-client privilege and patient safety work product privilege apply to this request. Defs.' Resp. 12–13.

Here, the Court concludes that Wellpath Defendants have not met their burden to establish that the PSQIA privilege applies. Patient safety work product "does not include information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system. Such separate information or a copy thereof reported to a patient safety organization shall not by reason of its reporting be considered patient safety work product." 42 U.S.C. § 299b-21(7)(B)(ii); *see also Dunn v. Dunn*, 163 F. Supp. 3d 1196, 1210 (M.D. Ala. 2016) ("[I]nformation that is not *developed for the purpose* of reporting to a patient safety organization does not become privileged merely because it is in fact reported to one.") (emphasis in original). Wellpath Defendants fail to explain how the mortality report, which Wellpath Defendants submitted to a patient safety organization sixteen months after Butterfield's death, was developed for the purpose of reporting to a patient safety organization.

Additionally, the Court finds that Wellpath Defendants have not demonstrated they are entitled to attorney-client privilege. Where evidence relates to both state and federal claims, a federal court applies federal common law to the question of attorney-client privilege. *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014). "Under certain circumstances, the attorney-client privilege will protect communications between clients and their attorneys from compelled disclosure in a court of law." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126 (9th Cir. 2012) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Because attorney-client privilege, like any other testimonial privilege, contravenes the fundamental principle that the public has a right to every man's evidence, courts "construe it narrowly to serve its purposes[.]" *See id.* (citations omitted). Wellpath Defendants argue that the mortality report indicates a

member of their legal department attended a meeting and "[t]hat person's presence means that the attorney-client privilege applies to the entire document." Defs.' Resp. 12. Wellpath Defendants do not cite to any authority to support this proposition, and this Court declines to construe the attorney-client privilege so broadly without first reviewing the documents at issue. *See In re Pac. Pictures Corp.*, 679 F.3d at 1126. As such, Wellpath Defendants are ordered to submit all documents responsive to Plaintiff's Request for Production No. 20 to the Court within seven (7) days of the date of this Order so that the Court can conduct an *in camera* review of the documents at issue.

**RFP No. 24**: "Plaintiff requested 'all call lists and provider schedules in effect with regard to the Josephine County Jail for the entirety of 2018, showing the schedules of off-site on-call providers and names and contact information for the same.'" Pl.'s Mot. 19. Wellpath Defendants represent that they have "produced all scheduling and time sheet information in [their] possession or control." Defs.' Resp. 13. As such, Plaintiff's motion is denied as moot.

**RFP No. 27**: "Plaintiff requested 'all quality improvement program documents for the Josephine County Jail from the time Wellpath, LLC or its predecessor companies first began providing services at the Josephine County Jail to the present time.'" Pl.'s Mot. 20. Wellpath Defendants states only: "Plaintiff incorporates the analysis of Wellpath's HIPAA PSQIA objections from her discussion to other requests, and Wellpath likewise re-iterates its analysis and responses to plaintiff's arguments." Defs.' Resp. 13. Given the Court's analysis above, and in the absence of additional arguments from Wellpath Defendants, the Court finds that HIPAA and PSQIA protections do not apply. As such, Wellpath Defendants are ordered to produce all documents responsive to Plaintiff's request for production.

**RFP No. 31**: "Plaintiff requested documents 'regarding the meeting at the Josephine County Jail that Dr. Vivek Shah described at page[] 42 of his deposition.'" Pl.'s Mot. 21. Wellpath Defendants represent that they have "conducted a search for documents and [have] not identified any responsive documents to date. Wellpath does not currently have any documents to produce." Defs.' Resp. 13. As such, Plaintiff's motion is denied without prejudice and with leave to file a future motion to compel if necessary.

**RFP No. 32**: "Plaintiff requested documents 'regarding any face-to-face meetings between Dr. Vivek Shah and Carly Hinkle from 2015 to the present.'" Pl.'s Mot. 22. Wellpath Defendants represent that they have conducted a search for documents, have not identified any responsive documents, and will supplement their response if such documents are found. Defs.' Resp. 14. As such, Plaintiff's motion is denied without prejudice and with leave to file a future motion to compel if necessary.

**RFP No. 33**: "Plaintiff requested 'all documents submitted to the Oregon Health Authority in connection with the licensing of EMS providers working in the Josephine County Jail.'" Pl.'s Mot. 23. Wellpath Defendants represent that they have conducted a search for documents and have not identified any responsive documents. Defs.' Resp. 14. As such, Plaintiff's motion is denied without prejudice and with leave to file a future motion to compel if necessary.

**RFP Nos. 35–38**: "Plaintiff requested documents related to any work-related injuries, leaves of absence or modified duty for Patricia Shevokis, who was the Health Services Administrator ('HSA') from July to September 2018. Plaintiff also requested any documents related to any time that another Wellpath employee filled in for Ms. Shevokis as the HSA." Pl.'s Mot. 25. Wellpath Defendants represent that they have produced Defendant Shevokis's

9 – Opinion and Order

personnel file and time-card records, but have not identified any additional responsive documents after searching for documents. Defs.' Resp. 14. As such, Plaintiff's motion is denied without prejudice and with leave to file a future motion to compel if necessary.

**RFP No. 39**: "Plaintiff requested all documents related to a meeting of Wellpath personnel described by Ms. Shevokis in her deposition." Pl.'s Mot. 27. Wellpath Defendants represent that they are searching for documents and will supplement their response if such documents are found. Defs.' Resp. 14. As such, Plaintiff's motion is denied without prejudice and with leave to file a future motion to compel if necessary.

**RFP No. 40**: "Plaintiff requested all documents related to an incident described by Patricia Shevokis in her deposition." Pl.'s Mot. 29. Wellpath Defendants argue information regarding Defendant Shevokis' termination is not relevant. Defs.' Resp. 15. Plaintiff argues the information is relevant because Defendant Shevokis was fired only a month after Butterfield's death. Pl.'s Mot. 29. The Court finds that Plaintiff's request is relevant and orders Wellpath Defendants to produce all documents responsive to Plaintiff's request for production.

**RFP Nos. 42, 47**: "Plaintiff requested all documents related to the medication refusal policy described by Patricia Shevokis during her deposition. Plaintiff also requested all documents related to 'whether a particular number of medication refusals would trigger some additional follow up, such as speaking with a provider.'" Pl.'s Mot. 30. Wellpath Defendants represent that they will produce the requested documents. Defs.' Resp. 15. As such, Plaintiff's motion is denied without prejudice and with leave to file a future motion to compel if necessary.

**RFP Nos. 44, 48**: "Plaintiff requested all documents related to the discussions of the scope of practice for Dawn Case and Krystal Hulsey." Pl.'s Mot. 31. Wellpath Defendants represent that they are searching for documents and will supplement their response if such

documents are found. Defs.' Resp. 15. As such, Plaintiff's motion is denied without prejudice and with leave to file a future motion to compel if necessary.

**RFP No. 45**: "Plaintiff requested all documents related to 'any concerns or complaints about Patricia Shevokis made by Krystal Hulsey,' as described by Dawn Case and Krystal Hulsey in their depositions." Pl.'s Mot. 32. Wellpath Defendants object on relevance grounds. Defs.' Resp. 16. The Court concludes that Plaintiff's request is relevant and orders Wellpath Defendants to produce all documents responsive to Plaintiff's request for production.

**RFP No. 46**: "Plaintiff requested 'all documents related to any training provided by Wellpath/CCS regarding how to conduct segregation rounds,' including 'how to complete the Segregation Rounds Log.'" Pl.'s Mot. 33. Wellpath Defendants represent that they are searching for documents and are working in good faith to comply with Plaintiff's request. Defs.' Resp. 16. As such, Plaintiff's motion is denied without prejudice and with leave to file a future motion to compel if necessary.

**RFP No. 49**: "Plaintiff requested 'all emails between Dr. Vivek Shah and Carly Hinkle.'" Pl.'s Mot. 34. Wellpath Defendants represent that they are searching for documents and are working in good faith to comply with Plaintiff's request. Defs.' Resp. 16. As such, Plaintiff's motion is denied without prejudice and with leave to file a future motion to compel if necessary.

**RFP No. 50**: "Plaintiff requested a copy of 'all nursing protocols that Carly Hinkle reviewed and approved,' as described in her deposition." Pl.'s Mot. 35. Wellpath Defendants represent that they are working to produce these documents. Defs.' Resp. 16. As such, Plaintiff's motion is denied without prejudice and with leave to file a future motion to compel if necessary.

**RFP No. 51**: "Plaintiff requested 'all emails between Carly Hinkle and any psychiatric nurse practitioners working for Options,' as described by Ms. Hinkle in her deposition." Pl.'s

Mot. 36. Wellpath Defendants represent that they are searching for documents and are working in good faith to comply with Plaintiff's request. Defs.' Resp. 16. Wellpath Defendants also argue that, to the extent Plaintiff seeks non-public correspondence between Defendant Hinkle and other practitioners, such correspondence falls within the scope of HIPAA. Defs.' Resp. 17. The Court agrees with Wellpath Defendants and orders Wellpath Defendants to produce all emails between Carly Hinkle and any psychiatric nurse practitioners working for Options unless such emails contain information concerning patients other than Butterfield that falls within the scope of HIPAA.

**RFP No. 61**: "Plaintiff requested 'all documents related to the meeting with Clint Mooney, Carly Hinkle, and someone from the jail staff,' as described by Clint Mooney (an Options supervisor) during his deposition." Pl.'s Mot. 37. Wellpath Defendants represent that they are searching for documents and are working in good faith to comply with Plaintiff's request. Defs.' Resp. 17. As such, Plaintiff's motion is denied without prejudice and with leave to file a future motion to compel if necessary.

**RFP Nos. 65–70**: Plaintiff made requests for production of various documents following Wellpath Defendants' responses to Plaintiff's requests for admission. Pl.'s Mot. 56–70. In response, Wellpath Defendants argue "Wellpath has established that it is entitled to PSQIA protection as explained in response to plaintiff's request for production 20." Defs.' Resp. 24. Wellpath Defendants also argue that Plaintiff's requests are vague and overbroad. *Id.* at 24–25. Given the Court's analysis above, and in the absence of additional arguments about PSQIA from Wellpath Defendants, the Court finds that PSQIA protections do not apply here. Additionally, after reviewing Plaintiff's requests, the Court concludes that Plaintiff's requests are neither

vague nor overbroad. As such, Wellpath Defendants are ordered to produce all documents responsive to Plaintiff's requests for production.

## II.   Requests for Admission

**RFA Nos. 1–3**: "Plaintiff requested that each of the named defendants with EMT licenses (Dawn Case, Krystal Hulsey and Amanda Wass) admit that she 'was not working under her EMT license while she was working in the Josephine County Jail from July to September 2018.'" Pl.'s Mot. 38. Wellpath Defendants "objected to plaintiff's requests because 'working under' was not defined and is vague." Defs.' Resp. 17. The Court has reviewed the parties' submissions and concludes that, given Plaintiff's clarification to Wellpath Defendants, Plaintiff's requests for admission are not vague. The Court orders Wellpath Defendants to provide answers to Plaintiff's requests for admission.

**RFA Nos. 13–15**: "Plaintiff requested that each of the named defendants with EMT licenses (Dawn Case, Krystal Hulsey and Amanda Wass) admit that she "was an unregulated assistive person as defined by OAR 851-006-0000(133) while she was working in the Josephine County Jail from July to September 2018.'" Pl.'s Mot. 39. Wellpath Defendants argue that "Plaintiff's request for admission demands a definitive legal conclusion regarding the interpretation of an administrative rule upon which reasonable minds can differ." Defs.' Resp. 20. The Court has reviewed the parties' submissions and agrees with Wellpath Defendants. Plaintiff's motion is denied.

**RFA No. 16**: "Plaintiff requested that the Wellpath defendants admit that 'the rules contained in OAR Chapter 851, Division 47 applied to any delegation of nursing tasks in the Josephine County Jail from July to September 2018.'" Pl.'s Mot. 41. Wellpath Defendants argue Plaintiff's request is vague on what tasks qualify as "nursing tasks." Defs.' Resp. 20–21. The

13 – Opinion and Order

Court has reviewed the parties' submissions and concludes that, given Plaintiff's clarification to Wellpath Defendants, Plaintiff's request for admission is not vague. The Court orders Wellpath Defendants to provide an answer to Plaintiff's request for admission.

**RFA No. 17**: "Plaintiff requested that the Wellpath defendants admit that 'the rules contained in OAR Chapter 851, Division 55 applied to Carly Hinkle's work as a nurse practitioner from July to September 2018.'" Pl.'s Mot. 41. Wellpath Defendants indicate they will amend their answer in response to Plaintiff's motion. Defs.' Resp. 21. As such, Plaintiff's motion is denied without prejudice and with leave to file a future motion to compel if necessary.

**RFA Nos. 21–27**: "Plaintiff requested that the Wellpath defendants admit that Wellpath and/or Correct Care Solutions received a copy of certain documents from an earlier Oregon wrongful death lawsuit before July 27, 2018 (the date Janelle Butterfield was booked into the Josephine County Jail for the last time)." Pl.'s Mot. 42. Wellpath Defendants indicate they will amend their answer in response to Plaintiff's motion. Defs.' Resp. 21. As such, Plaintiff's motion is denied without prejudice and with leave to file a future motion to compel if necessary.

**RFA Nos. 28–30, 36–39**: Wellpath Defendants summarize Plaintiff's requests for admission as follows: "Requests for admission 28 through 30 and 36 through 39 are all of a similar type, namely that plaintiff requests that the Wellpath defendants admit that meetings or activities discussed in the contract between Josephine County and Conmed did not occur, and that Conmed made certain promises when it submitted its 2012 proposal to provide jail medical services in the Josephine County Jail." Defs.' Resp. 21. However, Wellpath Defendants fail to offer any reasoning as to why Plaintiff's motion should be denied. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (a resisting party carries the heavy burden of showing

14 – Opinion and Order

why discovery should be denied). As such, the Court orders Wellpath Defendants to provide answers to Plaintiff's requests for admission.

**RFA Nos. 40–51**: Wellpath Defendants summarize Plaintiff's requests for admission as follows: "Requests for admission 40 through 51 are all of a similar type, namely that plaintiff requests that the Wellpath admit that certain Wellpath staff were held roles and positions as defined by the National Commission on Correctional Health Care Standards for Health Services in Jails (2014) [NCCHC] and that certain procedures described and defined by the NCCHC were not performed in the Josephine County Jail." Defs.' Resp. 22. Wellpath Defendants argue NCCHC guidelines are merely recommendations. *Id.* Plaintiff argues Wellpath Defendants should be compelled to provide answers because Wellpath Defendants are familiar with NCCHC standards. Pl.'s Mot. 47–56. The Court agrees with Plaintiff and orders orders Wellpath Defendants to provide answers to Plaintiff's requests for admission.

### III. Depositions

#### A. Scheduling

Plaintiff asks the Court to compel the deposition of Mandy Forsmann, who supervised Defendant Shevokis at some point during her employment. Plaintiff has agreed to limit this deposition to two hours. Pl.'s Mot. 61. Wellpath Defendants argue they cannot require Forsmann, a former employee, to sit for a deposition. Defs.' Resp. 23. The Court agrees. To the extent Plaintiff wishes to command the attendance of a non-party at a deposition, Plaintiff may proceed pursuant to Rule 45. Plaintiff's motion is denied.

**B. Questions**

1. Defendant Shah

"During the deposition of Dr. Vivek Shah, counsel for the Wellpath defendants objected to questions about lawsuits involving other incarcerated people." Pl.'s Mot. 62. Plaintiff seeks to compel Defendant Shah's answers to Plaintiff's deposition questions. Wellpath Defendants argue that Defendant Shah cannot discuss those lawsuits without disclosing protected health information in violation of HIPAA. Defs.' Resp. 23. Because Defendant Shah's answers could reasonably exceed the scope of publicly available information about the lawsuits, Wellpath Defendants' argument is well taken. Plaintiff's motion is denied as to Defendant Shah's deposition questions.

2. Defendant Shevokis

"During the deposition of Patricia Shevokis, counsel for the Wellpath defendants objected to questions about a phone call among Wellpath employees to discuss Ms. Butterfield's death." Pl.'s Mot. 64. During the deposition, Wellpath Defendants apparently objected on PSQIA grounds. *Id.* However, Wellpath Defendants do not address Defendant Shevokis' deposition questions in their Response. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (a resisting party carries the heavy burden of showing why discovery should be denied). As such, Plaintiff's motion is granted as to Defendant Shevokis' deposition questions.

///

///

///

///

///

**ORDER**

For the reasons set forth above, Plaintiff's motion to compel (ECF No. 83) is GRANTED in part and DENIED in part. Wellpath Defendants are ordered to submit all documents responsive to Plaintiff's Request for Production No. 20 to the Court for *in camera* review within seven (7) days from the date of this Order. Additionally, Wellpath Defendants are ordered to respond to all other requests consistent with this Opinion and Order within twenty-one (21) days from the date of this Order. All responses and documents shall be produced in accordance with the parties' protective orders (ECF Nos. 24, 58).

IT IS SO ORDERED and DATED this 25 day of October, 2022.

MARK D. CLARKE
United States Magistrate Judge