IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

CONNIE DENCE, as personal representative
for the Estate of Janelle Marie Butterfield,

Plaintiff,

v.

WELLPATH, LLC; CORRECT CARE
SOLUTIONS, LLC; CARLY HINKLE;
DAWN CASE; OPTIONS FOR SOUTHERN
OREGON, INC.; MERRICK KELLY-
ROBINSON; JOSEPHINE COUNTY;
DAVE DANIEL; AMANDA WASS;
CRYSTAL HULSEY; VIVEK SHAH;
PATRICIA SHEVOKIS; ED VINCENT; and
CLINT MOONEY,

Defendants.

Case No. 1:20-cv-00671-CL

**OPINION AND ORDER**

**CLARKE,** United States Magistrate Judge:

This case comes before the Court on Plaintiffs' Motion to Compel (ECF No. 83). Plaintiff Connie Dence ("Plaintiff"), as personal representative of the Estate of Janelle Marie Butterfield

("Butterfield"), filed this action against Defendants in April 2020. Plaintiff asserts deliberate indifference claims under 42 U.S.C. § 1983, as well as a negligence claim and a gross negligence/reckless misconduct claim under Oregon state law. First Am. Compl. ¶¶ 121–140, ECF No. 36 ("FAC").

On October 25, 2022, this Court instructed Wellpath Defendants to submit all documents responsive to Plaintiff's Request for Production No. 20 to the Court for *in camera* review of the documents at issue. *See* Op. & Order, ECF No. 101. Wellpath Defendants submitted a morbidity and mortality review report ("M&M Report") along with a supplemental memorandum. *See* ECF No. 102.[1] The Court has conducted an *in camera* review of the M&M Report and, for the reasons below, Plaintiffs' motion is GRANTED as to the M&M Report.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 26(b) describes the scope of discovery, in relevant part, as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Federal Rule of Civil Procedure 37 allows a party seeking discovery to bring a motion to compel responses to discovery. The resisting party carries the heavy burden of showing why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

---

[1] Wellpath Defendants do not claim the PSQIA privilege applies to Part I and Part II of the M&M Report, which covers numbered documents Wellpath_Butterfield_000001-000004. *See* Defs.' Memo. 2, ECF No. 102. Wellpath Defendants do, however, maintain that Part III of the M&M Report, which covers numbered documents Wellpath_Butterfield_000005-000007, is protected from discovery under the PSQIA. *Id.*

2 – Opinion and Order

The resisting party must show the discovery request is overly broad, unduly burdensome, irrelevant, or disproportional in light of "the issues at stake." Fed. R. Civ. P. 26(b)(2)(C). In order to meet this heavy burden, the resisting party must detail, with specificity, the reasons why each request is improper; "[b]oilerplate, generalized objections are inadequate and tantamount to making no objection at all." *S.E.C. v. Banc de Binary*, 2014 WL 5506780, at *3 (D. Nev. Oct. 30, 2014). "Under Rule 34, a party is not required to prepare new documents; the Rule only requires a party to produce documents that already exist." *Perales v. Thomas*, No. 10-cv-01314-BR, 2012 WL 4760872, at *1 (D. Or. Oct. 4, 2012) (citing *Alexander v. FBI*, 194 F.R.D. 305, 310 (D.C. Cir. 2000)).

## DISCUSSION

Wellpath Defendants do not claim the PSQIA privilege applies to Part I and Part II of the M&M Report, which covers numbered documents Wellpath_Butterfield_000001-000004. *See* Defs.' Memo. 2, ECF No. 102. Wellpath Defendants do, however, argue that Part III of the M&M Report, which covers numbered documents Wellpath_Butterfield_000005-000007, is Patient Safety Work Product ("PSWP") and is therefore protected from discovery under the Patient Safety and Quality Improvement Act of 2005 ("PSQIA"). *Id.*[2] Plaintiff argues that the PSQIA privilege does not apply because: (1) Wellpath Defendants were required to perform this review under their obligations unrelated to the PSQIA; (2) Wellpath Defendants' six-month delay in creating the M&M Report undercuts Wellpath Defendants' argument that the M&M Report was developed for the purpose of reporting to a patient safety organization; and (3) because the M&M Report contained inaccurate information, the review process was not

---

[2] There appears to be a scrivener's error in Wellpath Defendants' submissions. Wellpath Defendants identify Part III of the M&M Report as covering documents numbered Wellpath_Butterfield_000004-000007. *See* Defs.' Memo. 2, ECF No. 102. However, the M&M Report indicates that Part III begins on Wellpath_Butterfield_000005. As such, this Court's opinion concerns numbered documents Wellpath_Butterfield_000005-000007.

3 – Opinion and Order

specifically designed to determine the root cause of Butterfield's death. Pl.'s Resp. 4–7, ECF No. 103.

The Court previously determined:

> Here, the Court concludes that Wellpath Defendants have not met their burden to establish that the PSQIA privilege applies. Patient safety work product "does not include information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system. Such separate information or a copy thereof reported to a patient safety organization shall not by reason of its reporting be considered patient safety work product." 42 U.S.C. § 299b-21(7)(B)(ii); *see also Dunn v. Dunn*, 163 F. Supp. 3d 1196, 1210 (M.D. Ala. 2016) ("[I]nformation that is not *developed for the purpose* of reporting to a patient safety organization does not become privileged merely because it is in fact reported to one.") (emphasis in original). Wellpath Defendants fail to explain how the mortality report, which Wellpath Defendants submitted to a patient safety organization sixteen months after Butterfield's death, was developed for the purpose of reporting to a patient safety organization.

Op. & Order 7, ECF No. 101.[3]

The PSQIA defines PSWP with reference to two concepts: "patient safety organization" ("PSO") and "patient safety evaluation system" ("PSES"). "The term 'patient safety organization' means a private or public entity or component thereof that is listed by the Secretary [of Health and Human Services] pursuant to [PSQIA requirements]," 42 U.S.C. § 299b-21(4), and "[t]he term 'patient safety evaluation system' means the collection, management, or analysis of information for reporting to or by a patient safety organization," 42 U.S.C. § 299b-21(6). The parties do not dispute that the Center for Patient Safety is a PSO.

---

[3] The Court also found that Wellpath Defendants did not demonstrate they are entitled to attorney-client privilege with respect to the M&M Report. Op. & Order 7–8, ECF No. 101. Wellpath Defendants do not renew that argument here. As such, the Court focuses solely on Wellpath Defendants' PSQIA arguments.

The PSQIA defines three categories of PSWP: (1) materials[4] "assembled or developed by a provider for reporting to a patient safety organization and [ ] reported to a patient safety organization; ... and which could result in improved patient safety, health care quality, or health care outcomes," 42 U.S.C. § 299b-21(7)(A)(i)(I) (the "Reporting Prong"); (2) materials "developed by a patient safety organization for the conduct of patient safety activities; and which could result in improved patient safety, health care quality, or health care outcomes," 42 U.S.C. § 299b-21(7)(A)(i)(II) (the "PSO-Developed Prong"), and (3) materials that "identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system," 42 U.S.C. § 299b-21(7)(A)(ii) (the "Deliberations Prong"). However, the PSQIA excludes from the definition of PSWP "information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system." 42 U.S.C. § 299b-21(B)(ii).

Here, Wellpath Defendants argue the M&M Report constitutes PSWP under the Reporting Prong. *See* Defs.' Memo. 4, ECF No. 102 ("The report was prepared for reporting and was reported to the Center for Patient Safety PSO."). Wellpath Defendants also appear to argue the M&M Report constitutes PSWP under the Deliberations Prong. *See id.* at 6 ("[A] plaintiff may not – as Plaintiff seeks to do here – discover a provider's analyses, deliberations, and data assembled for the improvement of patient safety, health care quality, or health care outcomes[.]"). Plaintiff argues the M&M Report was not prepared for the sole purpose of reporting to a PSO. *See* Pl.'s Resp. 6, ECF No. 103. Plaintiff emphasizes that Wellpath Defendants are required to perform post-mortem reviews under their contract with Josephine County. *Id.*

---

[4] "Materials" include "any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements." 42 U.S.C. § 299b-21(7)(A).

5 – Opinion and Order

In *Estate of Hultman v. County of Ventura*, the plaintiff argued that "because Wellpath gathered the requested information to comply with state regulations and its contract with [the County], this takes the Report outside the privilege of the PSQIA." *Hultman*, 2022 WL 2101723, at *3 (C.D. Cal. May 16, 2022). In response, Wellpath argued that "Part III was part of the Clinical Mortality Review, a separate process, and is thus privileged PSWP." *Id.* at *8. The court noted that "if Part III of the Report was created for use at the Administrative Mortality Review meeting, for compliance with [state regulations], or for sharing with [the County], it is not PSWP because it was created for a purpose other than reporting to a PSO." *Id.* The court determined that, "[w]hile Wellpath asserts that the Clinical Mortality Review and Administrative Mortality Review are two separate pathways, Wellpath's Policy shows that the two pathways are intertwined, at least with respect to Part III." *Id.* The court thus found Wellpath did not meet its burden to establish application of the PSQIA privilege to Part III of the Report. *Id.* at *9.

This Court is presented with a similar set of circumstances here. Under Wellpath Defendants' contract with Josephine County, Wellpath Defendants agreed to "form a multidisciplinary Continuous Quality Improvement (CQI) Committee . . . to monitor the health services provided to the Josephine County Jail." Declaration of John Devlin, Ex. 7 at 2, ECF No. 104-7. The contract also states that "[a]ll sentinel events including, but not limited to, inmate death, suicides/serious suicide attempts, disasters/major events will be evaluated by the CQI committee" and that the "[c]ommittee will share results with the [Josephine County] Jail Administrator." *Id.* As Plaintiff points out, "[t]here appears to be no dispute that this M&M Report is the only review that Wellpath performed related to Ms. Butterfield's death." Pl.'s Resp. 5, ECF No. 103. Because Wellpath Defendants used the review for the dual purpose of reporting to a PSO and meeting their contractual obligations with Josephine County, the M&M Report

falls outside the scope of the PSQIA privilege. *See Penman v. Correct Care Solutions*, 2020 WL 4253214, at *4 (W.D. Ky. Jul. 24, 2020) ("[D]ocuments are not patient safety work product if those documents were collected or maintained for a purpose other than submission to a PSO or for a dual purpose.") (citation omitted).

The burden is on Wellpath Defendants to establish application of the PSQIA privilege to the M&M Report and the Court concludes that Wellpath Defendants have not met that burden.

## ORDER

For the reasons set forth above, Plaintiff's motion to compel (ECF No. 83) is GRANTED as to the M&M Report. Wellpath Defendants are ordered to submit the M&M Report to Plaintiff within fourteen (14) days from the date of this Order. All responses and documents shall be produced in accordance with the parties' protective orders (ECF Nos. 24, 58).

IT IS SO ORDERED and DATED this 29 day of November, 2022.

_____
MARK D. CLARKE
United States Magistrate Judge